**CLOSED**

NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENNETH STAHL, : | |
| : | Civil Action No. 07-4123 (SRC) |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | |
| MERRILL MAIN, et al., : | |
| : | |
| Defendants. : | |
| : | |
| : | |

**CHESLER**, District Judge

This matter comes before the Court upon Defendants' motion for summary judgment (docket item # 19). Pro se Plaintiff Kenneth Stahl ("Plaintiff" or "Stahl") has not opposed this motion. The Court has considered the papers submitted by Defendants. It rules based on those submissions pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, Defendants' motion will be granted.

I.  BACKGROUND

This civil rights action arises from an alleged attack on pro se Plaintiff Stahl, who is civilly committed pursuant to the New Jersey Sexually Violent Predator Act, N.J.S.A. 30:4-27.24, et seq. The following summary of the facts is based on Plaintiff's Complaint and on the affidavits submitted by Defendants in support of their motion for summary judgment. Plaintiff has not submitted any evidence to rebut the facts as presented by Defendants.

The Complaint alleges that Stahl was assaulted by G.G.N., another civilly committed resident at the Special Treatment Unit ("STU") in Kearney, New Jersey. Stahl claims that his constitutional due process rights under the Fourteenth Amendment had been violated by Defendants Merrill Main and Kevin Ryan, employees of the Department of Health and Human Services, and by Defendants Paul Lagana and George Heyman, employees of the Department of Corrections, because they did nothing to prevent the attack despite knowing that G.G.N. had sexually assaulted him in the past. Stahl alleges that, on the afternoon of June 30, 2007, G.G.N. entered his room while Stahl was sleeping, demanded sex and choked Stahl with his hands for five minutes when Stahl refused. Stahl reported the incident to STU staff. He was immediately taken to the infirmary where, on the same date as the alleged incident, he was evaluated by a nurse. The nurse noted that she did not observe any visible injuries on or around Stahl's neck. She also visually inspected the front and back of his upper torso, which did not display any signs of injury. When asked whether he had injuries on any other part of his body, Stahl responded that he did not. Following his medical evaluation, Stahl was placed in protective custody. Stahl stated, however, that he did not need the protective placement because he was not afraid of G.G.N. and because he and G.G.N. were not housed in the same wing of the STU.

G.G.N. denied having committed the assault. He admitted that while he was in the wing housing Stahl at or about the time of the alleged assault, he was getting a haircut by another resident in the wing's dayroom. G.G.N. also reported that Stahl had made similar false accusations about him in the past.

Indeed, Stahl had accused G.G.N. of sexual assault at the STU in 2003. Stahl ultimately admitted that he had fabricated this reported assault. The Court notes this fact insofar as it is

relevant to Stahl's claim that Defendants failed to protect him from the attack even though they knew that this resident had previously assaulted him.  Defendants report that between the 2003 accusation and the subject incident, there are no complaints by Stahl against G.G.N. on record.

Defendants filed the instant motion to dismiss on January 22, 2008.  According to Local Civil Rule 7.1(d)(2), Plaintiff's opposition to the motion was originally due on February 4, 2008.  The Court granted Plaintiff's request for an extension and, by Order of February 28, 2008 (Docket item # 24) set the new deadline as March 24, 2008.  No opposition has been filed by Plaintiff to date.

## II.    LEGAL ANALYSIS

### A.    Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party.  See Boyle v. Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48.  Pursuant to Federal Rule of Civil Procedure 56(e), the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993)).

  **B.**  **<u>Discussion</u>**

Plaintiff's claim for relief arises out of 42 U.S.C. § 1983, which provides for civil redress of a constitutional violation by a person acting under color of state law.  That statute provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

28 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color or state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or the laws

of the United States.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Among other arguments raised, Defendants assert that the Court should grant them summary judgment based on their entitlement to qualified immunity.  Qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."  Anderson v. Creighton, 483 U.S. 635, 638 (1987).  The Supreme Court has held that whether a defendant is entitled to qualified immunity is a question for the court, not the jury, and should be decided early in the proceedings so that the defendant may avoid the burdens of litigation and thus enjoy the immunity to which he or she is entitled.  Saucier v. Katz, 533 U.S. 194, 200-01 (2001).

A court conducting a qualified immunity analysis in a § 1983 action must apply a two-pronged analysis.  Id. at 201.  The court must first consider whether, taking the facts in the light most favorable to the party asserting the injury, the facts demonstrate that the conduct of the state actor defendant violated a constitutional right.  Id.  If they do, then the court proceeds to the second step of the inquiry, which asks whether the right was clearly established.  Id.  Unless the right was clearly established, the state actor is entitled to qualified immunity.  Id. at 202.

In this case, the Court need not proceed past the threshold question of the qualified immunity analysis.  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  Id. at 201.  In this case, Plaintiff is claiming that Defendants did not fulfill their constitutional duty to protect

him from harm.  See DeShaney v. Winnebago County Dept' of Soc. Svcs., 489 U.S. 189, 200 (1989)  (holding that while state typically does not have duty to protect a person against private violence, the due process clause imposes obligation to protect person once he or she is taken into custody by the state; Youngberg v. Romeo, 457 U.S. 307, 315-16 (1982) (holding that individual who was involuntarily committed to state institution for mentally retarded had due process right to safe conditions of confinement).  The uncontroverted facts before the Court demonstrate that Defendants did not violate Stahl's substantive due process rights under the Fourteenth Amendment in allegedly failing to protect him from the reported assault.  A plaintiff's right to substantive due process is violated when the behavior of the state actor is so egregious it may be said to shock the conscience.  County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998). Defendants' conduct may shock the conscience only if they acted with "deliberate indifference." Id. at 851-52.  To establish this, Plaintiff must show that Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that the inference was drawn.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

      Applying this standard, the Court finds that nothing in the record indicates that the actions of the Defendants shock the conscience.  No evidence has been presented to the Court showing or suggesting that Defendants were deliberately indifferent to a known danger posed by G.G.N. to Stahl.  Indeed, the evidence presented by Defendants demonstrates that they could not have been aware of any risk of the harm complained of by Stahl because Stahl's only reported complaint regarding G.G.N. was made four years before the subject incident and was in fact retracted as false by Stahl.  The evidence proffered by Defendants also suggests that no attack even occurred.  Plaintiff, on the other hand, has failed to come forward with any facts or proof  to

rebut Defendants' showing that there is no genuine issue as to whether they violated Plaintiff's constitutional rights. See Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.")

In sum, the uncontroverted facts show that no constitutional violation occurred. Under the Saucier analysis, Defendants are entitled to qualified immunity against Plaintiff's claims. Accordingly, summary judgment for Defendants must be granted.

**IV.   CONCLUSION**

For the foregoing reasons, this Court grants Defendants' motion for summary judgment. An appropriate form of order will be filed together with this Opinion.

                                                     s/ Stanley R. Chesler
                                               STANLEY R. CHESLER
                                               United States District Judge

DATED: June 13, 2008